**David SCHWARTZ, Plaintiff,**

v.

**CONCORDIA INTERNATIONAL CORP., Mark Thompson, and Adrian de Saldanha, Defendants.**

16–CV–6576 (NGG) (CLP)

United States District Court, E.D. New York.

Signed June 9, 2017

Filed 06/12/2017

---

Peretz Bronstein, Yitzchak Eliezer Solo-veichik, Bronstein, Gewirtz & Grossman, LLC, New York, NY, for Plaintiff.

Gerard G. Pecht, Pro Hac Vice, Norton Rose Fulbright US LLP, Houston, TX, Mark Allen Robertson, Norton Rose Ful-bright US LLP, New York, NY, Peter A. Stokes, Pro Hac Vice, Norton Rose Ful-bright US LLP, Austin, TX, for Defen-dants.

### MEMORANDUM & ORDER

NICHOLAS G. GARAUFIS, United States District Judge

Plaintiff David Schwartz initiated this putative class action in the New York State Supreme Court, Kings County, against Defendants Concordia Internation-al Corp., Mark Thompson, and Adrian de Saldanha. (See Compl. (Dkt. 1–1 at ECF p.6).) Plaintiff's claims all arise under the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §§ 77a et seq. On Novem-ber 28, 2016, Defendants removed the ac-tion to this court. (Not. of Removal (Dkt. 1).) Pending before the court are Plaintiff's motion to remand the action to New York Supreme Court and Defendants' cross-mo-tion for a transfer of venue to the South-ern District of New York ("SDNY"). (See Pl. Mot. to Remand (Dkt. 12); Defs. Mot. to Transfer Venue (Dkt. 13).) For the rea-sons stated below, Plaintiff's motion to re-mand is DENIED and Defendants' motion to transfer venue is GRANTED.

### I. PLAINTIFF'S MOTION TO RE-MAND

Plaintiff's motion to remand presents a question of law that has sharply divided the nation's district courts. In 1998, Con-gress amended the Securities Act by pass-ing the Securities Litigation Uniform Stan-dards Act ("SLUSA"), Pub. L. No. 105–353, 112 Stat. 3227. SLUSA precluded cer-tain types of securities class actions, and also defined categories of actions that can and cannot be removed to federal court. The courts have wrestled with the precise boundaries of those categories ever since. Certain questions of removability suffer

from a dearth of appellate authority, presumably due to the bar on appellate review of remand orders. See 28 U.S.C. § 1447(d).

Plaintiff argues that SLUSA prohibits removal of class actions that solely assert claims under the Securities Act. Defendants counter that such actions must be removable because SLUSA vested the federal courts with exclusive jurisdiction over them. The court finds that Defendants' view is the most logical reading of the statutory text. Recognizing, however, that district courts have disagreed as to the meaning of SLUSA's less-than-lucid text, the court confirms its interpretation by looking to the statutory and legislative history for evidence of congressional intent.

### A. Removal on the Basis of Federal Question Jurisdiction

■ "The federal district courts have 'original jurisdiction' of civil actions 'arising under' federal law, and unless otherwise provided by Congress, they have removal jurisdiction over 'any civil action brought in a State court of which the district courts of the United States have original jurisdiction.'" N.Y. ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A., 824 F.3d 308, 315 (2d Cir. 2016) (quoting 28 U.S.C. §§ 1331, 1441(a)). "The defendant, as the party seeking removal and asserting federal jurisdiction, bears the burden of demonstrating that the district court has original jurisdiction." McCulloch Orthopaedic Surgical Servs., PLLC v. Aetna Inc., 857 F.3d 141, 144 (2d Cir. 2017) (citation omitted).

### B. Statutory Text

■ "When construing a statute, we begin with its language and proceed under the assumption that the statutory language, unless otherwise defined, carries its plain meaning." Carlin v. Davidson Fink

LLP, 852 F.3d 207, 214 (2d Cir. 2017) (alteration omitted) (quoting Chen v. Major League Baseball Props., Inc., 798 F.3d 72, 76 (2d Cir. 2015)). "A statutory provision's plain meaning may be 'understood by looking to the statutory scheme as a whole and placing the particular provision within the context of that statute.'" Catskill Mountains Chapter of Trout Unlimited, Inc. v. Envtl. Prot. Agency, 846 F.3d 492, 513 (2d Cir. 2017) (quoting Louis Vuitton Malletier S.A. v. LY USA, Inc., 676 F.3d 83, 108 (2d Cir. 2012)).

Prior to SLUSA, the Securities Act provided federal and state courts with concurrent jurisdiction over claims arising thereunder (the "Jurisdiction Provision"), but prohibited removal of any Securities Act action "brought in any State court of competent jurisdiction" (the "Anti-Removal Provision"). 15 U.S.C. § 77v(a) (1995) (amended 1998). SLUSA amended the Securities Act by adding a preclusion provision, codified at 15 U.S.C. § 77p, and by carving out new exceptions to the Anti-Removal and Jurisdiction Provisions. The court finds that the amended Jurisdiction Provision strips state courts of concurrent jurisdiction over covered class actions asserting Securities Act claims.

#### 1. Section 77p

Section 77p precludes certain types of class actions asserting claims under state law that sound in fraud.

Subsection (f) provides definitions: subject to certain exceptions, a "'covered class action' is a lawsuit in which damages are sought on behalf of more than 50 people," and a "'covered security' is one traded nationally and listed on a regulated national exchange." Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit, 547 U.S. 71, 83, 126 S.Ct. 1503, 164 L.Ed.2d 179 (2006)

(footnotes omitted)[1]; see also 15 U.S.C. § 77p(f). The parties do not appear to dispute that the instant putative class action constitutes a "covered class action" involving "covered securities" under SLUSA. (See, e.g., Compl. ¶ 27 (estimating "that there are at least hundreds or thousands of members in the proposed Class"); Defs. Opp'n to Pl. Mot to Remand (Dkt. 16) at 4 ("Plaintiff does not dispute that Concordia stock is a 'covered security.'").)

Subsection (b) is the preclusion provision:

> No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging—
>
> (1) an untrue statement or omission of a material fact in connection with the purchase or sale of a covered security; or
>
> (2) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

15 U.S.C. § 77p(b).[2] In the interest of analytical efficiency, this opinion will refer to such precluded actions as "state-law class actions"; the court is cognizant, however, that the definition of a "covered class action" under SLUSA does not track the more general "class action" definition under Federal Rule of Civil Procedure 23.

■ Subsection (c) discusses removal of state-law class actions: "Any covered class action brought in any State court involving a covered security, as set forth in subsection (b), shall be removable to the Federal district court for the district in which the action is pending, and shall be subject to subsection (b)." Id. § 77p(c). The Supreme Court has clarified in dicta that "removal jurisdiction under subsection (c)" is limited to "precluded actions defined by subsection (b)," that is, covered class actions asserting state-law fraud claims.[3] Kircher v. Putnam Funds Tr., 547 U.S. 633, 643–44, 126 S.Ct. 2145, 165 L.Ed.2d 92 (2006). This construction appears bizarre at first blush, but it has a purpose. "To prevent actions precluded by SLUSA from being litigated in state court, SLUSA authorizes defendants to remove such actions to federal court, effectively ensuring that federal courts will have the opportunity to determine whether a state action is precluded."

1. The quoted language from Dabit summarized SLUSA's additions to the Securities and Exchange Act of 1934 (the "Exchange Act"), but SLUSA added "substantially identical" preclusion provisions to both the Exchange Act and the Securities Act. Dabit, 547 U.S. at 82 n.6, 126 S.Ct. 1503.

2. Section 77p(b) has been characterized as a preclusion provision rather than a preemption provision "because SLUSA 'does not itself displace state law with federal law but makes some state-law claims non-actionable through the class-action device in federal as well as state court.'" In re Kingate Mgmt. Ltd. Litig., 784 F.3d 128, 138 n.15 (2d Cir. 2015) (quoting Kircher v. Putnam Funds Trust, 547 U.S. 633, 636 n.1, 126 S.Ct. 2145, 165 L.Ed.2d 92 (2006)).

3. Numerous district courts have concluded that "while the analysis in Kircher may be dicta, it is nevertheless highly persuasive." Badri v. Terraform Glob., Inc., No. 15-CV-06323, 2016 WL 827372, at *4 (N.D. Cal. Mar. 3, 2016) (collecting cases). A separate line of cases, however, distinguishes Kircher and holds that "the reference in § 77p(c) to subsection (b) [includes] state law class actions among the cases that may be removed, but does not limit removal to just those cases." Rubin v. Pixelplus Co., No. 06-CV-2964 (ERK), 2007 WL 778485, at *4–5 (E.D.N.Y. Mar. 13, 2007) (alterations omitted) (quoting Alkow v. TXU Corp., Nos. 02–CV–2738–K, 02–CV2739–K, 2003 WL 21056750 (N.D. Tex. May 8, 2003)). See generally Niitsoo v. Alpha Nat. Res., Inc., 902 F.Supp.2d 797, 801 (S.D.W. Va. 2012) (collecting cases in support of both outcomes).

Madden v. Cowen & Co., 576 F.3d 957, 964–65 (9th Cir. 2009) (footnote omitted); see also 15 U.S.C. § 77p(d)(4) ("In an action that has been removed from a State court pursuant to subsection (c), if the Federal court determines that the action may be maintained in State court pursuant to [the exceptions in subsection (d)], the Federal court shall remand [the] action."); Kircher, 547 U.S. at 642–44, 126 S.Ct. 2145.

### 2. The Anti–Removal Provision

SLUSA amended the Anti–Removal Provision as follows (new text underlined): "Except as provided in section 77p(c) of this title, no case arising under [the Securities Act] and brought in any State court of competent jurisdiction shall be removed to any court of the United States." 15 U.S.C. § 77v(a). Because the instant case involves only federal claims asserted under the Securities Act, this case does not fall under the Anti–Removal Provision's exception for state-law class actions, per the cross-reference to section 77p(c).[4]

■ There is a second exception built in to the Anti–Removal Provision, however: the statute only prohibits removal of "case[s] arising under" the Securities Act

that are "brought in [a] State court of competent jurisdiction." Id. § 77v(a) (emphasis added). "If a state court lacks jurisdiction over a Securities Act case, it is not a court of competent jurisdiction, so the removal bar does not apply and the usual federal removal statute does." Hung v. IDreamSky ·Tech. Ltd., No. 15-CV-2514 (JPO), 2016 WL 299034, at *2 (S.D.N.Y. Jan. 25, 2016). The court must therefore consider whether, in this instance, the New York state court was a "court of competent jurisdiction."

### 3. The Jurisdiction Provision

As noted, federal and state courts previously enjoyed full concurrent jurisdiction over actions with claims arising under the Securities Act. See 15 U.S.C. § 77v(a) (1995) (amended 1998). SLUSA carved out an exception, however: the Jurisdiction Provision now provides that federal and state courts have concurrent jurisdiction over Securities Act cases, "except as provided in section 77p [] with respect to covered class actions." Id. § 77v(a) (1998).[5]

To clarify the scope of this exception, the court proceeds in order through the provisions of section 77p. Subsections (a) through (e) cannot logically be read as

---

**4.** "As it is written, the meaning of the [Anti-Removal Provision] is plain—no securities actions 'arising under' the Securities Act can be removed except those defined in § 77p(c). However, this meaning is incompatible with § 77p(c) because, according to the Supreme Court, § 77p(c) does not permit the removal of any federal actions 'arising under' the Securities Act." Niitsoo, 902 F.Supp.2d at 804 (citing Kircher, 547 U.S. at 642–44, 126 S.Ct. 2145). This ostensible inconsistency has an important purpose, however: "the exception to the anti-removal provision prevents plaintiffs from frustrating removal of state-law based covered class actions by adding a non-removable individual [Securities] Act claim to an otherwise removable state-law based covered class action." Knox v. Agria Corp., 613 F.Supp.2d 419, 425 (S.D.N.Y. 2009).

**5.** The full text of the amended Jurisdiction Provision is as follows (SLUSA addition underlined):

The district courts of the United States and the United States courts of any Territory shall have jurisdiction of offenses and violations under this subchapter and under the rules and regulations promulgated by the Commission in respect thereto, and, concurrent with State and Territorial courts, except as provided in section 77p of this title with respect to covered class actions, of all suits in equity and actions at law brought to enforce any liability or duty created by this subchapter.

15 U.S.C. § 77v(a).

imposing any limit on concurrent jurisdiction over Securities Act claims. Subsection (a) preserves "other rights and remedies" alongside those created under the Securities Act, except as otherwise provided. Id. § 77p(a). "None of · § 77p's four substantive subsections discuss federal law at all—subsections (b), (d), and (e) all deal indisputably with state law class actions, and do not have anything to do with concurrent jurisdiction over federal securities class actions." [6] Niitsoo v. Alpha Nat. Res., Inc., 902 F.Supp.2d 797, 805 (S.D.W. Va. 2012).

The only remaining provisions in section 77p are the definitions in subsection (f). Unlike any other provision in section 77p, the definition of "covered class actions" can reasonably be incorporated by reference into the Jurisdiction Provision. Thus, the only logical reading of the amended Jurisdiction Provision is that state courts retain concurrent jurisdiction over "all suits in equity and actions at law brought to enforce any liability or duty created by" the Securities Act, except "with respect to covered class actions," as defined in section 77p(f)(2). Id. § 77v(a). So understood, the Jurisdiction Provision vests the federal courts with exclusive jurisdiction over covered class actions asserting claims under the Securities Act ("Securities Act class actions").[7] As a result, if a Securities Act class action is initiated in state court, that action is not barred from removal; indeed, such action must either be removed to federal court or dismissed for lack of jurisdiction.[8]

■ Because the instant action is a putative Securities Act class action, the New York state court was not a "court of competent jurisdiction" under the Anti–Removal Provision, and the action was therefore properly removed. In so holding, this court joins a growing consensus among district courts in the Second Circuit. Compare Hung, 2016 WL 299034, at *4 (holding that federal courts have exclusive jurisdiction over Securities Act class actions); In re Fannie Mae 2008 Sec. Litig., No. 08-CV-7831 (PAC), 2009 WL 4067266, at *2 (S.D.N.Y. Nov. 24, 2009) (same); Knox v. Agria Corp., 613 F.Supp.2d 419, 425 (S.D.N.Y. 2009) (same); Rubin v. Pixelplus Co., No. 06-CV-2964 (ERK), 2007 WL 778485, at *4–5 (E.D.N.Y. Mar. 13, 2007) (holding in favor of removability on different grounds), with Irra v. Lazard Ltd., No. 05-CV-3388 (RJD) (RML), 2006 WL 2375472, at *1–2 (E.D.N.Y. Aug. 15, 2006) (adopting a Report and Recommendation and ordering remand under the Anti–Removal Provision, with no discussion of the Jurisdiction Provision). The majority view within the Second Circuit departs, however, from what "appears to be emerging as the dominant view around the country," namely "that only [state-law class actions] can be removed to federal court" under section 77p(c) "for the purpose of dismiss-

---

**6.** See 15 U.S.C. §§ 77p(b)-(c) (providing for the removal and dismissal of covered class actions asserting state-law fraud claims), 77p(d) (defining exceptions to subsection (b)'s preclusion provision for certain types of state-law claims and state actors), 77p(e) (providing that state securities commissions retain any applicable enforcement authority under state law).

**7.** "The Supreme Court's dicta in [Kircher] [are] not to the contrary. In that case, the Supreme Court was previewing the scope of [section 77p(c)] removal of covered class actions raising state law claims, not the question of removal of covered class actions raising [Securities] Act claims." Knox, 613 F.Supp.2d at 425 (citing Kircher, 547 U.S. at 642–43, 126 S.Ct. 2145).

**8.** If an action is removed from a state court that "did not have jurisdiction over" certain claims, the federal court is not, on that basis, "precluded from hearing and determining" those claims. 28 U.S.C. § 1441(f).

ing the precluded state law claims," and all other actions are subject to the Anti–Removal Provision. Elec. Workers Local # 357 Pension v. Clovis Oncology, Inc., 185 F.Supp.3d 1172, 1180 (N.D. Cal. 2016) (collecting cases).

### 4. Plaintiff's Textual Arguments

Plaintiff objects to the court's reading on two main grounds, neither of which the court finds persuasive. Plaintiff first argues that Congress is unlikely to "effectuate an abrupt jurisdictional stripping by making an unspecific reference to § 77p without any signal in § 77p(f) that the definition of 'covered class action' was meant to serve as the parameters of the federal courts' exclusive jurisdiction." (Pl. Mem. in Supp. of Mot. to Remand ("Pl. Mem.") (Dkt. 12–1) at 6 (quoting Niitsoo, 902 F.Supp.2d at 805 n.4.).)

The court disagrees. "[I]t would not be odd for Congress to draw a line between federal securities claims within and outside jurisdiction of state courts by pointing to a definition in another statutory provision." Hung, 2016 WL 299034, at *3. The operative jurisdictional language—though "inartfully drafted," id.—is appropriately located in a provision titled "Jurisdiction of Offenses and Suits." 15 U.S.C. § 77v(a). As discussed above, the exception to concurrent jurisdiction cannot logically be read as referring to any portion of section 77(p) other than the definition of "covered class action." Rather than repeating the multiparagraph definition, Congress saw fit to incorporate the definition by reference.[9] This heavily cross-linked statute is "awkward," no doubt, "but that does not make it ambiguous on the point at issue." Lamie v. U.S. Tr., 540 U.S. 526, 534, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004) (discussing

sections 327 and 330 of the Bankruptcy Code).

Second, Plaintiff proposes an alternative reading of the Jurisdiction Provision. Plaintiff points out that SLUSA's exception to concurrent jurisdiction "refers not to Section 77p(f)(2), but to Section 77p generally." (Pl. Mem. at 6 (citation omitted).) Plaintiff submits that the reference specifically "pertains to covered class actions based on state law under subpart (b)" rather than the definition of "covered class actions" under (f)(2). (Id. (quoting Elec. Workers, 185 F.Supp.3d at 1178).) Thus, the gravamen of Plaintiff's proposal is that the amended Jurisdiction Provision eliminates jurisdiction over actions that are already precluded under section 77p(b). (See Pl. Mem. at 9 ("[I]f a case is precluded, neither the federal court nor the state court has jurisdiction.") (internal citations and other emphases omitted)).

■ This argument fails as a matter of strict textual interpretation. First, Plaintiffs view is incompatible with the Jurisdiction Provision's scope, which is limited to defining federal and concurrent jurisdiction over actions "brought to enforce any liability or duty created by [the Securities Act]." 15 U.S.C. § 77v(a) (emphasis added). Section 77p(b) only precludes state-law remedies, and is therefore irrelevant to the scope of jurisdiction over federal claims. Moreover, Plaintiff misreads section 77p; subsection (c) makes state-law class actions "removable" at the defendant's option, but does not strip state courts of jurisdiction over such actions. Id. § 77p(c); see also Kircher, 547 U.S. at 646, 126 S.Ct. 2145 ("[A] defendant can enlist the Federal Judiciary to decide preclusion" by removing a state-law class action under

---

**9.** Indeed, subsection (f) itself imports by cross-reference a detailed definition for "covered securities" contained elsewhere in the

Securities Act. See 15 U.S.C. § 77p(f)(3) (incorporating definitions from id. § 77r(b)).

section 77p(c), but can also "elect to leave a case where the plaintiff filed it and trust the state court (an equally competent body) to make the preclusion determination." (internal citation omitted)). For these reasons, the provisions of 77p(b) and (c) cannot logically be incorporated into section 77v(a) as a limitation on concurrent jurisdiction. "When Congress amends legislation, courts must 'presume it intends the change to have real and substantial effect.'" Ross v. Blake, —— U.S. ——, 136 S.Ct. 1850, 1858, 195 L.Ed.2d 117 (2016) (alteration omitted) (quoting Stone v. Immigration & Naturalization Serv., 514 U.S. 386, 397, 115 S.Ct. 1537, 131 L.Ed.2d 465 (1995)). The only way to give force to SLUSA's amendment is to read the Jurisdiction Provision as vesting the federal courts with exclusive jurisdiction over covered class actions asserting claims under the Securities Act.

At a deeper level, Plaintiff's reasoning betrays fundamental misconceptions about the nature of jurisdiction and "Our Federalism." Younger v. Harris, 401 U.S. 37, 44, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) (describing "a system in which there is sensitivity to the legitimate interests of both State and National Governments"). Plaintiff argues that "Sections 77v(a) and 77p(b) dovetail in operation" because "state courts lose concurrent jurisdiction" over state-law class actions "once [those actions] are removed to federal courts in accordance with Section 77p." (Pl. Mem. at 6 (citation omitted).) This argument conflates two distinct types of jurisdictional limits. Whenever any case is removed from state to federal court, the state court loses jurisdiction over the claims and litigants in that particular case. 28 U.S.C. § 1446(d). Loss of actual jurisdiction over a single removed case is entirely separate, however, from a statute that strips all state courts of concurrent jurisdiction over all

cases involving a defined set of claims and litigants.

More concerning, however, is Plaintiff's implied premise that Congress has the ability to modify state courts' jurisdiction over state-law causes of action. Congress may deprive state courts of jurisdiction over federal claims. See, e.g., 28 U.S.C. § 1338(a) (providing for exclusive federal jurisdiction over federal patent and copyright law). Congress may also preempt or preclude certain state claims, requiring that such claims be dismissed for lack of substantive merit. See Hughes v. Talen Energy Mktg., LLC, —— U.S. ——, 136 S.Ct. 1288, 1297, 194 L.Ed.2d 414 (2016) (discussing preemption). Indeed, SLUSA permissibly provides for exclusive federal jurisdiction over some claims and preclusion of others, as discussed above. What Congress may not do, however, is strip state courts of original jurisdiction over claims arising under state law. The court is aware of no constitutional authority that would permit such an encroachment on the states' sovereignty over their own judiciaries. Cf. Howlett ex rel. Howlett v. Rose, 496 U.S. 356, 372, 110 S.Ct. 2430, 110 L.Ed.2d 332 (1990) ("The general rule, bottomed deeply in belief in the importance of state control of state judicial procedure, is that federal law takes the state courts as it finds them.... The States thus have great latitude to establish the structure and jurisdiction of their own courts." (internal quotation marks and citations omitted)). Thus, even if SLUSA's text were wholly ambiguous, Plaintiff's theory would be heavily disfavored under the "cardinal principle" of constitutional avoidance: when a proposed statutory interpretation "raises a serious doubt as to [ ] constitutionality," reviewing courts must "first ascertain whether a construction of the statute is fairly possible by which the question may be avoided." Zadvydas v. Davis, 533 U.S. 678, 689, 121 S.Ct. 2491, 150 L.Ed.2d

653 (2001) (internal quotation marks omitted) (citing <u>Crowell v. Benson</u>, 285 U.S. 22, 62, 52 S.Ct. 285, 76 L.Ed. 598 (1932)).

## C. Statutory and Legislative History

■ The Second Circuit has acknowledged that SLUSA's "general terms are in some respects ambiguous, so that it is not always easy to understand whether SLUSA applies." <u>In re Kingate Mgmt. Ltd. Litig.</u>, 784 F.3d 128 (2d Cir. 2015). "[B]ecause of these ambiguities," interpreting SLUSA "requires not only [ ] study of the words of the statute, but also ... an understanding of the prior statutory enactments that led to its passage." <u>Id</u>. "Where statutory language is ambiguous, we may [also] consider legislative history, but in doing so, we must 'construct an interpretation that comports with the statute's primary purpose and does not lead to anomalous or unreasonable results.'" <u>Carlin</u>, 852 F.3d at 214 (alteration omitted) (quoting <u>Puello v. Bureau of Citizenship & Immigration Servs.</u>, 511 F.3d 324, 327 (2d Cir. 2007)); <u>see also</u> <u>Price Trucking Corp. v. Norampac Indus., Inc.</u>, 748 F.3d 75, 82 (2d Cir. 2014) ("Congress passes legislation with specific purposes in mind. When the ordinary tools of statutory construction permit us to do so, we must attempt to discover those purposes from the text, structure and history of the acts in question." (quoting <u>N.Y.C. Health & Hosps. Corp. v. Perales</u>, 954 F.2d 854, 862–63 (2d Cir. 1992), <u>cert. denied</u>, 506 U.S. 972, 113 S.Ct. 461, 121 L.Ed.2d 369 (1992))).

The court has already determined that the relevant statutory text vested the federal courts with exclusive jurisdiction over "covered class actions" asserting claims under the Securities Act. In light of the tangled text, however, and in recognition of the vigorous disagreement among the nation's district courts, the court seeks confirmation of its textual analysis by looking to the relevant statutory and legislative history.

### 1. Statutory History

The Securities Act and its counterpart, the Securities and Exchange Act of 1934 (the "Exchange Act"), were passed "[i]n response to the sudden and disastrous collapse in prices of listed stocks in 1929, and the Great Depression that followed." <u>Dabit</u>, 547 U.S. at 78, 126 S.Ct. 1503. The Securities Act "includes a number of antifalsity provisions" that impose "registration and disclosure" requirements on distributions of securities. <u>In re Kingate</u>, 784 F.3d at 136 (2d Cir. 2015) (citations omitted).

In 1995, Congress passed the Private Securities Litigation Reform Act ("PSLRA"), Pub. L. No. 104–67, 109 Stat. 737, "to combat perceived abuses in securities litigation" under the Securities Act and other laws. <u>Halliburton Co. v. Erica P. John Fund, Inc.</u>, — U.S. ——, 134 S.Ct. 2398, 2413, 189 L.Ed.2d 339 (2014). PSLRA introduced "heightened pleading requirements, limits on damages and attorney's fees, a 'safe harbor' for certain kinds of statements, restrictions on the selection of lead plaintiffs in securities class actions, sanctions for frivolous litigation, and stays of discovery pending motions to dismiss." <u>Id</u>. (citation omitted).

"By 1998, however, it became clear to Congress that many of the goals of PSLRA had not been realized." <u>Lander v. Hartford Life & Annuity Ins. Co.</u>, 251 F.3d 101, 107 (2d Cir. 2001).

According to SLUSA's Congressional findings, many class action plaintiffs avoided the stringent procedural hurdles erected by PSLRA by bringing suit in state rather than federal court. By suing in state court under state statutory or common law, these litigants were able to assert many of the same causes of action, but avoid the heightened procedur-

al requirements instituted in federal court.... SLUSA was passed in 1998 primarily to close this loophole in PSLRA.

Id. at 107–08 (internal citations omitted).

## 2. Legislative History

Three congressional committees reviewed drafts of SLUSA's text and produced reports thereon: reports were published by the Senate Committee on Banking, Housing, and Urban Affairs (the "Senate Report"), S. Rep. No. 105–182 (1998); the House of Representatives Commerce Committee (the "House Report"), H.R. Rep. No. 105–640 (1998); and the House Conference Committee[10] (the "Conference Report"), H.R. Conf. Rep. No. 105–803 (1998).[11] Plaintiff highlights comments in all three reports showing that Congress intended both to preclude state-law class actions, and also to make them removable. (See Pl. Mem. at 7–9.) The court acknowledges those comments, which conform with the court's interpretation of the Anti–Removal Provision and section 77p, as discussed above. The court finds, however, that the legislative history provides clear support for SLUSA's additional purpose of curtailing state courts' jurisdiction over Securities Act class actions.

Plaintiff is correct that "[t]he Senate Report at no point refers to eliminating concurrent state court jurisdiction over Securities Act claims." (Id. at 8.) See also S. Rep. No. 105–182. This is no surprise,

however, because the May 1998 Senate Report analyzed a preliminary SLUSA draft that did not include any amendments to the Jurisdiction or Anti–Removal Provisions. See id. at *8–9. Those amendments first appeared in the House Report, published in July 1998, and were subsequently incorporated in the ultimate Conference Report, published in October 1998. See H.R. Rep. No. 105–640, at *24; H.R. Conf. Rep. No. 105–803, at *4–5. Plaintiff asserts that these reports, too, "make[ ] no mention of eliminating concurrent state court jurisdiction over Securities Act claims." (Pl. Mem. at 8 (discussing the House Report), 9 (discussing the Conference Report).) Plaintiff is flatly mistaken.

The very first substantive section of the Conference Report, under the heading "Joint Explanatory Statement of the Committee of Conference," begins as follows:

> Title 1 of [ ] the Securities Litigation Uniform Standards Act of 1998, [which includes the amended Jurisdiction Provision,] makes Federal court the exclusive venue for most securities class action lawsuits. The purpose of this title is to prevent plaintiffs from seeking to evade the protections that Federal law provides against abusive litigation by filing suit in State, rather than in Federal, court.

H.R. Conf. Rep. No. 105–803, at *13. One could hardly ask for a clearer statement of legislative intent. Similar statements are scattered throughout the Conference Re-

---

10. "A conference report is an agreement on legislation that is negotiated between the House and Senate via conference committees." *Conference Reports,* U.S. Cong., http://conferencereport.gpo.gov/ (last visited June 7, 2017).

11. See Abbe R. Gluck & Lisa Schultz Bressman, *Statutory Interpretation from the Inside—An Empirical Study of Congressional Drafting, Delegation, and the Canons: Part I,*

65 Stan. L. Rev. 901, 977 (2013) (reporting on a survey of 137 congressional staffers, and concluding that "[b]y far, the types of legislative history viewed as most reliable were committee reports and conference reports in support of the statute"); see also id. at 976 n.258 (collecting cases with "statements about the reliability of committee and conference reports").

port, as well as in the House Report. See H.R. Conf. Rep. No. 105–803, at * 13 ("Under the legislation, class actions relating to a 'covered security' ... alleging fraud or manipulation must be maintained pursuant to the provisions of Federal securities law, in Federal court (subject to certain exceptions)."), *13–14 (explaining "that the legislation bars from State court" covered class actions, and noting that "[t]he legislation preserves State jurisdiction over" the types of actions codified in section 77p(d)), *15 (discussing the post-PSLRA shift in class actions from federal to state court, and concluding that "[t]he solution to this problem is to make Federal court the exclusive venue for most securities fraud class action litigation involving nationally traded securities"); see also H.R. Rep. No. 105–640, at *8–9.

Curiously, some district courts have found "this legislative history is too murky to aid in interpreting the statute." Iron Workers Mid–S. Pension Fund v. Terraform Glob., Inc., No. 15-CV-6328, 2016 WL 827374, at *5 (N.D. Cal. Mar. 3, 2016) (collecting cases from within its district). Others have construed the references to exclusive federal jurisdiction as "isolated snippets of legislative history" that "must be weighed against" legislative history regarding removal and dismissal of state-law class actions. Elec. Workers, 185 F.Supp.3d at 1183 n.7 (citation omitted). The two statutory purposes are not mutually exclusive, however. Indeed, they are mutually reinforcing: both aims address the fundamental problem identified in SLUSA's legislative findings, namely that "a number of securities class action lawsuits have shifted from Federal to State courts," and that "shift has prevented that Act from fully achieving its objectives." SLUSA, Pub. L. No. 105–353, § 2(2), (3); see also id. § 2(5) ("[I]t is appropriate to enact national standards for securities class action lawsuits involving nationally traded securities." (emphasis added)). The Jurisdiction Provision and section 77p both promote uniform administration of federal standards in federal forums.

The statutory and legislative history cited above not only confirm the court's textual analysis, but also reveal the incoherence of Plaintiff's position. Under Plaintiff's proposed interpretation,

[s]tate-law class actions alleging securities fraud could be removed and dismissed. Federal-law securities class actions would encounter the PSLRA's procedural protections if filed in federal court. But federal-law securities class actions filed in state court would have to stay in state court and proceed without the PSLRA's protections. Taken together, the PSLRA and SLUSA would encourage plaintiffs to litigate federal securities class actions in state court, with lessened procedural protections, and they would prohibit defendants from removing such cases to federal court.

Hung, 2016 WL 299034, at *3. "This outcome is implausible given the purpose of the Acts in question." Id.; see also Carlin, 852 F.3d at 214 (directing courts to "construct an interpretation that comports with the statute's primary purpose and does not lead to anomalous or unreasonable results" (alteration and citation omitted)); United States v. Messina, 806 F.3d 55, 70 (2d Cir. 2015) ("[I]nterpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available." (quoting Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 575, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982))).

**D. Conclusion**

The court finds that SLUSA's text, statutory history, and legislative history align in support of two symbiotic statutory

goals: (1) precluding class actions that assert state-law securities fraud claims and (2) vesting federal courts with exclusive jurisdiction over class actions asserting federal securities fraud claims. The court therefore finds that this action was properly removed. Accordingly, Plaintiff's motion to remand must be denied.

The court recognizes, however, that questions as to SLUSA's purpose and application have occupied the attention of dozens of courts.[12] Despite the best efforts of worthy judges, the district courts have failed to reach a consensus either as to the ultimate question of removability, or even as to the most appropriate analytical approach supporting each possible outcome. It is sadly ironic that each court must undertake the involved analysis anew, given the purpose underlying the prohibition on appellate review of remand orders: "Section 1447(d) reflects Congress's longstanding 'policy of not permitting interruption of the litigation of the merits of a removed case by prolonged litigation of questions of jurisdiction of the district court to which the cause is removed.'" Powerex Corp. v. Reliant Energy Servs., Inc., 551 U.S. 224, 238, 127 S.Ct. 2411, 168 L.Ed.2d 112 (2007) (quoting United States

v. Rice, 327 U.S. 742, 751, 66 S.Ct. 835, 90 L.Ed. 982 (1946)).

This statutory quandary calls for an immediate congressional fix. Congress has neglected its legislative duty to construct and amend statutes in a manner that supports straightforward application. This court has determined that Congress intended for federal courts to maintain exclusive jurisdiction over class actions asserting federal securities fraud claims. Other courts, looking at the same statutory text and legislative history, have held that such actions cannot reach federal court if they are not initiated there. Whatever Congress actually intended in passing SLUSA, that intent is clearly not being uniformly effectuated. The courts have spent nearly two decades attempting to disentangle this Gordian knot; the time has long since passed for Congress to make a clean cut.[13]

## II. DEFENDANTS' MOTION TO TRANSFER VENUE

■■■■ Defendants seek to have this action transferred to SDNY for consolidation with a previously filed case pending before Judge Richard M. Berman, Meyer v. Concordia International Corp., 16–CV–6467 (RMB).[14] (Defs. Mot. to Transfer

---

**12.** The uncertainty extends beyond the dispositive issue in this case concerning removal of class actions with federal claims. See, e.g., In re Kingate, 784 F.3d at 132 (addressing "a number of textual ambiguities as to the scope" of SLUSA's preclusion provisions).

**13.** Alternatively, the Supreme Court could articulate a uniform interpretation of SLUSA's text without the need for a legislative amendment. The court is aware of at least one pending petition for a writ of certiorari on this issue. See Petition for Writ of Certiorari, Cyan, Inc. v. Beaver Cty. Emps. Ret. Fund, No. 15-1439, 2016 WL 3040512 (filed May 24, 2016).

**14.** The court rejects Defendants' request to "address[ ] venue first," thereby "allowing

Judge Berman to rule on the remand issue." (Defs. Mem. at 7.)

> Customarily, a federal court first resolves any doubts about its jurisdiction over the subject matter of a case before reaching the merits or otherwise disposing of the case. On some occasions, however, considerations of judicial economy and restraint may persuade the court to avoid a difficult question of subject-matter jurisdiction when the case may be disposed of on a simpler ground.

Cantor Fitzgerald, L.P. v. Peaslee, 88 F.3d 152, 155 (2d Cir. 1996). The court is skeptical that transferring the case to a different federal venue constitutes a "disposal" under Cantor, since it would not moot the question of jurisdiction. Cf. Sinochem Int'l Co. v. Malaysia

Venue.) The court grants the motion to transfer venue, with the caveat that the ultimate questions of relatedness and consolidation are beyond this court's authority to adjudicate. See Fed. R. Civ. P. 42; SDNY Local Rule 13.

District courts may transfer a case "to any other district ... where it might have been brought" when doing so would serve "the convenience of parties and witnesses" and "the interests of justice." 28 U.S.C. § 1404(a). The present action has no clear connection to either the Eastern or Southern District because neither Plaintiff nor any Defendant resides in New York. (Compl. ¶ 4.) Therefore, the only question is whether a transfer is merited based on the possibility that this action will be consolidated with, or at least deemed related to, Meyer.

Meyer, like this action, is a putative securities fraud class action against the same defendants; one key difference is that the Meyer plaintiff asserts claims under the Exchange Act rather than the Securities Act. (See Meyer Am. Compl. (Dkt. 14–2).) Defendants highlight a number of common factual allegations regarding particular Concordia earnings disclosures, and note that certain Concordia investors would be eligible for the proposed classes in both actions. (Defs. Mem. in Supp. of Mot. to Transfer Venue ("Defs. Mem.") (Dkt. 13–1) at 4–5.) Plaintiff does not contest any of these similarities. Rather, Plaintiff argues that transfer and consolidation would not serve judicial economy because the Meyer action is at a more advanced stage of litigation: an amended complaint has been filed, and the defendants have already filed a motion to dismiss. (Pl.

Opp'n to Mot. to Transfer (Dkt. 15) at 4.)

The dismissal motion was fully briefed only as of April 5, 2017, however, and Judge Berman has not yet ruled on it. (See Meyer Dkt.) The court concludes that a pending motion to dismiss does not outweigh the potential efficiency gains that a transfer may achieve for the courts and for the parties. Because the two actions assert different legal claims, this case does not fall under the "first-to-file" rule, which provides that "a party who first brings an issue into a court of competent jurisdiction should be free from the vexation of concurrent litigation over the same subject matter," AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A., 626 F.3d 699, 722 (2d Cir. 2010) (quoting Nat'l Equip. Rental. Ltd. v. Fowler, 287 F.2d 43, 45 (2d Cir. 1961)). Even so, this transfer motion implicates similar "considerations of judicial administration and conservation of resources." Id. (citation omitted). The two actions share defendants, putative class members, and several core factual allegations. The legal claims, though distinct, arise under twin federal securities statutes that are often litigated together. See, e.g., Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc., 252 F.R.D. 188, 190 (S.D.N.Y. 2008) (noting that claims under the Securities Act and the Exchange Act are "well-suited for consolidation"). Therefore, the court grants Defendants' motion to transfer venue to the Southern District.

## III. CONCLUSION

For the reasons stated above, Plaintiff's motion to remand (Dkt. 12) is DENIED and Defendants' motion to transfer venue (Dkt. 13) is GRANTED. This action is

---

Int'l Shipping Corp., 549 U.S. 422, 431, 127 S.Ct. 1184, 167 L.Ed.2d 15 (2007) (holding that a district court may dismiss based on

forum non conveniens without first addressing personal jurisdiction).

hereby TRANSFERRED to the Southern District of New York.

SO ORDERED.