**20-3413-cv**
*Tantaros v. Fox News Network, LLC*

# In the
# United States Court of Appeals
## For the Second Circuit
_____

AUGUST TERM 2020

ARGUED: MAY 19, 2021
DECIDED: AUGUST 27, 2021

No. 20-3413-cv

ANDREA K. TANTAROS,
*Plaintiff-Appellant,*

*v.*

FOX NEWS NETWORK, LLC, THE ESTATE OF ROGER AILES, WILLIAM
SHINE, SUZANNE SCOTT, DIANNE BRANDI, and IRENA BRIGANTI,
*Defendants-Appellees.*

_____

Interlocutory Appeal from the United States District Court for
the Southern District of New York.

_____

Before: WALKER, CABRANES, and WESLEY, *Circuit Judges.*

_____

Plaintiff Andrea K. Tantaros commenced this action in the New
York Supreme Court pursuant to New York Civil Practice Law and
Rule § 7515 (C.P.L.R. § 7515), challenging arbitration of her sexual

harassment, hostile work environment, and retaliation claims against Fox News Network, LLC and certain senior executives.  C.P.L.R. § 7515 prohibits mandatory arbitration clauses covering employment discrimination claims, "[e]xcept where inconsistent with federal law." Following removal to federal court, the district court (Andrew L. Carter, *J.*) denied Tantaros's motion to remand on the basis that the action necessarily raises an issue of federal law:  whether her claim is preempted by the Federal Arbitration Act.  On appeal, Tantaros argues (1) that her claim does not necessarily raise an issue of federal law because the federal issue is an anticipated defense, (2) that the federal issue is not substantial, and (3) that it cannot be resolved in federal court without disrupting the federal-state balance.  For the reasons that follow, we **AFFIRM** the district court's December 17, 2019 order.

Judge Wesley dissents in a separate opinion.

————

BRUCE FEIN, Fein & DelValle, PLLC, Washington, D.C., *for Plaintiff-Appellant*.

C. HARKER RHODES IV, Kirkland & Ellis LLP, Washington, D.C. (Matthew W. Lampe, New York, NY; Anthony J. Dick, Alexandra Zabrierek, Washington, D.C., Jones Day, *on the brief*), *for Defendants-Appellees*.

————

JOHN M. WALKER, JR., *Circuit Judge*:

Plaintiff Andrea K. Tantaros commenced this action in the New York Supreme Court pursuant to New York Civil Practice Law and Rule § 7515 (C.P.L.R. § 7515), challenging arbitration of her sexual harassment, hostile work environment, and retaliation claims against Fox News Network, LLC and certain senior executives. C.P.L.R. § 7515 prohibits mandatory arbitration clauses covering employment discrimination claims, "[e]xcept where inconsistent with federal law." Following removal to federal court, the district court (Andrew L. Carter, *J.*) denied Tantaros's motion to remand on the basis that the action necessarily raises an issue of federal law: whether her claim is preempted by the Federal Arbitration Act (FAA). On appeal, Tantaros argues (1) that her claim does not necessarily raise an issue of federal law because the federal issue is an anticipated defense, (2) that the federal issue is not substantial, and (3) that it cannot be resolved in federal court without disrupting the federal-state balance. For the reasons that follow, we AFFIRM the district court's December 17, 2019 order.

## BACKGROUND

Andrea K. Tantaros was employed at Fox News Channel, LLC (Fox News) as a political commentator. In May 2016, Fox News initiated an arbitration against Tantaros alleging that she breached her employment agreement by publishing a book without prior approval. The employment agreement contained an arbitration clause providing that "[a]ny controversy, claim or dispute arising out of or relating to . . . [Tantaros's] employment shall be brought before

a mutually selected three-member arbitration panel."[1]  In August 2016, Tantaros filed a complaint against Fox News and certain of its senior executives (Defendants) in the New York Supreme Court, alleging sexual harassment, hostile work environment, tortious interference with business expectancy, and retaliation for her complaints of sexual harassment.  In February 2017, the New York Supreme Court granted Defendants' motion to compel arbitration of the sexual harassment claims, and the claims of both parties proceeded in arbitration through discovery.

A little more than a year later, New York passed the law that is at the heart of this appeal.  On April 10, 2018, the New York State Legislature enacted C.P.L.R. § 7515 which, as relevant here, declares void any mandatory arbitration clause covering sexual harassment claims:

> (b)(i) Prohibition.  *Except where inconsistent with federal law*, no written contract, entered into on or after the effective date of this section shall contain a prohibited clause [*e.g.,* any mandatory arbitration clause]. . . .

> (iii) Mandatory arbitration clause null and void.  *Except where inconsistent with federal law*, the provisions of such prohibited clause [*e.g.,* any mandatory arbitration clause] shall be null and void. . . .[2]

---

[1] J. App. 17.

[2] C.P.L.R. § 7515(a)(2), (b)(i), (b)(iii) (emphases added).

On October 11, 2019, the law was amended to extend beyond sexual harassment claims to all employment discrimination claims.[3]

In July 2019, Tantaros brought a claim pursuant to C.P.L.R. § 7515 in the New York Supreme Court seeking a temporary restraining order, preliminary injunction, and permanent injunction against continuing arbitration of her employment claims, and a declaratory judgment that § 7515 prohibits enforcement of the arbitration agreement. Defendants removed the action to the District Court for the Southern District of New York contending that the case necessarily raises an issue of federal law: whether Tantaros's claim is consistent with the FAA. Tantaros moved to remand. Pending adjudication of this § 7515 claim, the parties and arbitrators agreed to stay the arbitration.

On December 17, 2019, the district court denied Tantaros's motion to remand, concluding that the case arises under federal law pursuant to *Gunn v. Minton*[4] and *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing.*[5] The district court certified the order for interlocutory appeal and, on October 6, 2020, we granted immediate review pursuant to 28 U.S.C. § 1292(b).

## DISCUSSION

The sole issue on appeal is whether Tantaros's claim was properly removed on the basis that C.P.L.R. § 7515 arises under

---

[3] Act of Aug. 12, 2019, 2019 N.Y. Sess. Laws Ch. 160 (A. 8421) (McKinney) (effective October 11, 2019).

[4] 568 U.S. 251 (2013).

[5] 545 U.S. 308 (2005).

federal law pursuant to 28 U.S.C. § 1331.  Tantaros argues: (1) the action does not necessarily raise an issue of federal law because preemption is an anticipated defense; (2) any federal issue is not substantial; and (3) the exercise of federal jurisdiction here would upset the federal-state balance.

We review the district court's denial of a motion to remand *de novo*.[6]

## I.      Tantaros's Suit Arises Under Federal Law

"Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute."[7]  Under 28 U.S.C. § 1331, federal district courts have subject-matter jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States."  While federal question jurisdiction is typically invoked by a plaintiff pleading a federal cause of action,[8] it also extends to a "special and small category" of cases brought under state law that implicate a federal issue.[9]  In determining whether a state law claim warrants the exercise of federal jurisdiction, we apply the four-factor test set forth in *Gunn* and *Grable*:  "[F]ederal jurisdiction over a state law claim will lie if a federal issue is:  (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved

---

[6] *Bounds v. Pine Belt Mental Health Care Res.*, 593 F.3d 209, 214 (2d Cir. 2010).

[7] *Gunn*, 568 U.S. at 256 (internal quotation marks omitted).

[8] *Grable*, 545 U.S. at 312.

[9] *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006).

by Congress."[10]    The *Grable-Gunn* test reflects the "commonsense notion that a federal court ought to be able to hear" state law claims that "turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues."[11]

The removing defendant has the burden of establishing federal jurisdiction.[12]    Here, the parties agree that the federal issue is contested, but they dispute the first, third, and fourth steps of the *Grable-Gunn* analysis.  We conclude that because § 7515 requires a threshold showing that the plaintiff's claim complies with the FAA, it necessarily raises a substantial federal issue that may be resolved in federal court without threatening the federal-state balance.

### A. Necessarily Raised

The first step of the *Grable-Gunn* test concerns whether the state law claim necessarily raises a question of federal law.  This element is met where "the plaintiff's right to relief necessarily depends on resolution of a . . . question of federal law."[13]  In other words, federal jurisdiction exists if a court must apply federal law to the plaintiff's

---

[10] *Gunn*, 568 U.S. at 258; *see also Grable*, 545 U.S. at 314 ("[T]he question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities.").

[11] *Grable*, 545 U.S. at 312.

[12] *United Food & Com. Workers Union, Local 919 v. CenterMark Props. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994).

[13] *Empire Healthchoice Assurance*, 547 U.S. at 690 (internal quotation marks omitted).

claim in order to decide the case.[14]  "[A] mere speculative possibility that a federal question may arise at some point in the proceeding" is insufficient to establish jurisdiction in federal court.[15]

Based on these principles, courts derived the so-called well-pleaded complaint rule as "a quick rule of thumb" for discerning the presence of a federal question.[16]  Focusing on "what necessarily appears in the plaintiff's statement of his own claim,"[17] a district court may exercise federal jurisdiction only if "a right or immunity created by the Constitution or laws of the United States . . . [is] an element, and an essential one, of the plaintiff's cause of action."[18]  The inquiry must be "unaided by anything alleged in anticipation or avoidance of defenses which it is thought the defendant may interpose."[19]  This is true "even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case."[20]

The New York Court of Appeals has yet to construe the essential elements of a prima facie case under § 7515.  When faced with an unsettled interpretation of state law, we proceed by "carefully predict[ing] how the state's highest court would resolve the

---

[14] *See Gunn*, 568 U.S. at 259 (acknowledging that a legal malpractice claim "necessarily require[d] application of [federal] patent law").

[15] *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 493 (1983).

[16] *Franchise Tax Bd. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 11 (1983).

[17] *Taylor v. Anderson*, 234 U.S. 74, 75 (1914).

[18] *Gully v. First Nat'l Bank*, 299 U.S. 109, 112 (1936).

[19] *Taylor*, 234 U.S. at 75-76.

[20] *Franchise Tax Bd.*, 463 U.S. at 14.

uncertainty or ambiguity."[21]   Our predictive inquiry is guided by decisions of the state's lower courts, decisions on the same issue in other jurisdictions, and "other sources the state's highest court might rely upon in deciding the question."[22]   Imprecise as this undertaking may be, it is "our job" to complete this "necessary task."[23]

Applying this guidance, we consider how the New York Court of Appeals would decide the instant issue:   whether the condition "except where inconsistent with federal law" is an essential element of § 7515.[24]

New York principles of statutory interpretation provide that the "primary consideration is to ascertain and give effect to the

---

[21] *In re Thelen LLP*, 736 F.3d 213, 219 (2d Cir. 2013), *certified question answered*, 24 N.Y.3d 16 (2014) (internal quotation marks and alteration omitted).

[22] *DiBella v. Hopkins*, 403 F.3d 102, 112 (2d Cir. 2005).

[23] *Id.* at 111.

[24] We conclude that there is no need to certify this question to the New York Court of Appeals.   Certification is appropriate only "in those cases where there is a split of authority on the issue, where [a] statute's plain language does not indicate the answer, or when presented with a complex question of New York common law for which no New York authority can be found."   *DiBella*, 403 F.3d at 111 (internal quotation marks omitted).   As Judge Leval has recently reminded us, "there are drawbacks to certification," which "almost invariably results in substantial increase to the expenses the parties incur and 'inevitably delays the resolution of the case, sometimes for well more than a year.'" *53rd St., LLC v. U.S. Bank Nat'l Ass'n*, No. 20-1804-cv, 2021 WL 3412063, at *5 (2d Cir. Aug. 5, 2021) (per curiam) (quoting *Valls v. Allstate Ins. Co.*, 919 F.3d 739, 742 (2d Cir. 2019). As discussed below, the plain text of the statute compels the conclusion that to prevail under § 7515, Tantaros must show that her claim is consistent with federal law.   Because the statutory language answers the interpretive question presented here, we decline to certify the issue.   *See, e.g.*, *id.*; *Riordan v. Nationwide Mut. Fire Ins. Co.*, 977 F.2d 47, 52-54 (2d Cir. 1992).

intention of the Legislature."[25]  Because "the clearest indicator of legislative intent is the statutory text, the starting point . . . must always be the language itself, giving effect to the plain meaning thereof."[26]  All parts of the legislation should be "harmonized with each other as well as with the general intent of the whole statute."[27]  The court should avoid any construction that renders one part of the statute meaningless.[28]  While the plain text is generally determinative, New York law holds that the legislative history of the statute "may also be relevant and is not to be ignored, even if words [of the statute] be clear."[29]

C.P.L.R. § 7515 provides, "Except where inconsistent with federal law," no written contract shall contain a mandatory arbitration clause, and any such clause shall be null and void.[30]  The exception clause plainly implicates the federal question of whether Tantaros's claim conflicts with a federal law.  The exception is also an essential element of § 7515:  as the prefatory clause to the provisions prohibiting mandatory arbitration clauses, the clause conveys a

---

[25] *DaimlerChrysler Corp. v. Spitzer*, 7 N.Y.3d 653, 660 (2006) (internal quotation marks omitted); *see also* N.Y. Stat. § 92.

[26] *People v. Pabon*, 28 N.Y.3d 147, 152 (2016) (internal quotation marks omitted); *see also MacNeil v. Berryhill*, 869 F.3d 109, 113 (2d Cir. 2017) ("The starting point of statutory interpretation is, of course, plain meaning." (quoting *People v. Owusu*, 93 N.Y.2d 398, 401 (1999)); N.Y. Stat. Law § 94 (providing that the meaning of a statute is to be "ascertained from the words and language used," which are "generally construed according to [their] natural and most obvious sense").

[27] *Pabon*, 28 N.Y.3d at 152 (quoting N.Y. Stat. Law § 98).

[28] *MacNeil*, 869 F.3d at 113 (citing *In re Springer v. Bd. of Educ. of City Sch. Dist. of N.Y.*, 27 N.Y.3d 102, 107 (2016)).

[29] *See Riley v. Cty. of Broome*, 95 N.Y.2d 455, 463 (2000) (internal quotation marks omitted).

[30] C.P.L.R. § 7515 (b)(i), (b)(iii).

necessary condition that the court must consider before further construing the scope of the prohibition. To disregard the exception would "render[] one part [of § 7515] meaningless" and circumvent the plain text of the statute.[31]

Tantaros principally argues that the exception sets forth a defense to § 7515 which makes up no part of a well-pleaded complaint. Often, the argument that a federal law displaces a conflicting state law, also known as preemption, is invoked as a defense. In some such circumstances, the question of preemption does not "necessarily arise[]" in the proceedings[32] because the defendant may decline to assert the defense or a party may concede the issue.[33] But this is no ordinary cause of action. By embedding the issue of preemption into the operative provision, § 7515 reflects the legislature's deliberate choice to require the plaintiff, at the very outset of bringing a claim under the statute, to plead consistency with federal law. For this reason, the exception does not simply state the obvious.[34] While consistency with federal law and constitutionality under the Supremacy Clause are questions that "lurk[] in the

---

[31] *MacNeil*, 869 F.3d at 113 (quoting *In re Springer*, 27 N.Y.3d at 107).

[32] *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 7 (2003) (internal quotation marks omitted).

[33] *See, e.g., Gustavsen v. Alcon Lab'ys, Inc.*, 903 F.3d 1, 10 (1st Cir. 2018) (noting that the plaintiffs conceded that a federal regulation may preempt their state law claims); *Ctr. For Legal Advoc. v. Hammons*, 323 F.3d 1262, 1273 n.12 (10th Cir. 2003) (noting that the "defendants essentially concede that [a federal statute] preempts state laws").

[34] We respectfully disagree with the dissent that "[t]his is circular reasoning." Dissenting Op. 3. The "consistency with federal law" condition does not simply state the obvious that federal law is supreme. It converts the preemption issue from a defense that the defendant may invoke, into an exception that a § 7515 plaintiff must plead as part and parcel of the plaintiff's prima facie case.

background" of every state law claim, § 7515 transforms them from "doubtful and conjectural" issues into a concrete dispute ripe for judicial review.[35]

This reading is bolstered by the distinction between "exceptions" and "provisos" under New York law. An exception is the plaintiff's burden to plead, being "generally a part of the enactment itself," whereas a proviso functions as a defense, "avoid[ing] things by way of defeasance or excuse."[36] In distinguishing between the two, New York courts have considered: (1) whether the exclusion appears in the enacting clause, or arises by way of an amendment or external source;[37] (2) whether the exclusion calls for information uniquely within the defendant's knowledge;[38] and (3) whether pleading the exclusion "would impose an unreasonably onerous burden."[39] Based on these factors, we have no difficulty concluding that the condition in § 7515 is an exception that is Tantaros's burden to plead.

First, the condition appears at the outset of the enacting clause of § 7515 itself and frames the restriction on mandatory arbitration clauses, rather than as an amendment or as part of a separate statute entirely. This is characteristic of an exception. By contrast, provisos

---

[35] *Gully*, 299 U.S. at 117.

[36] N.Y. Stat. Law § 211 cmt.; 1A Norman J. Singer & J. D. Shambie Singer, *Sutherland Statutes and Statutory Construction* § 21:11 (7th ed. 2020) ("[O]ne who asserts a claim based upon a statute must negative, in pleadings and proofs, any exceptions in the provision on which the claim is based, whereas matter in a proviso can be left for the adversary as a defensive matter.").

[37] *Rogers v. Phillips*, 29 N.Y.S.3d 623, 625 (3rd Dep't 2016).

[38] *People v. Davis*, 13 N.Y.3d 17, 31-32 (2009).

[39] *People v. Tatis*, 95 N.Y.S.3d 160, 162 (1st Dep't 2019), *leave to appeal denied*, 124 N.E.3d 724 (2019).

are frequently not part of the enacting clause or "arise[]. . . by way of a statutory amendment."[40]  Here such a subsection for provisos exists at § 7515(a)(4)(b)(ii), and it would contain the condition in question if the legislature had intended that it be a defense.   While that subsection is entitled "Exceptions," the New York Court of Appeals has cautioned that "the fact that [the] qualifying language is introduced by 'except' is not determinative,"[41] and New York courts have not hesitated to find the presence of provisos in subsections entitled "exceptions."[42]

Second, federal preemption is a question of law and, as such, it does not turn on information uniquely in the defendant's hands.

The third consideration, the pleading burden, is the only factor that could possibly support Tantaros's reading of § 7515.  Tantaros argues that the New York legislature could not have expected the

---

[40] *Rogers*, 29 N.Y.S.3d at 625; *see also People v. Sylla*, 792 N.Y.S.2d 764, 768 (App. Term 2005) ("[I]f the exception is enacted later in the statute or in a subsequent statute, it is a proviso which the [plaintiff] need neither plead nor prove the negative of in order to make out a prima facie case."); *Rowell v. Janvrin*, 151 N.Y. 60, 68-69 (1896) ("[A]n exception in a statute is something embodied in, and forming a part of, the enacting clause itself . . . . If words follow the enacting clause, or are subsequently attached to it or ingrafted upon it by way of amendment, which modify or change its scope and application, or take a particular case out of it, then such new matter or modifying words constitute . . . a 'proviso,' which the plaintiff was not bound to negative by pleading.").

[41] *Davis*, 13 N.Y.3d at 31; *see also* 1A Norman J. Singer & J. D. Shambie Singer, *Sutherland Statutes and Statutory Construction* § 21:11 (7th ed. 2020) ("The particular form of words used to introduce the applicable provision generally does not determine whether it should be classed a proviso or an exception.").

[42] *See, e.g., People v. Abraham*, 128 N.Y.S.3d 779 (App. Term 2020); *People v. Macs*, 953 N.Y.S.2d 552 (App. Term 2012).

plaintiff to negate a conflict between his or her claim and every single federal law.[43] We are not persuaded that the pleading burden is too onerous. It is quite evident that the § 7515 limitation is directed at one particular statute, the FAA, which significantly shapes the field of arbitration.[44] The Supreme Court has reaffirmed in numerous cases that the FAA displaces any state law disfavoring arbitration of a particular type of claim.[45] We do not address whether § 7515 is preempted here, because that question is for the district court at this stage. We have no trouble discerning, however, that a § 7515 plaintiff, in pleading consistency with federal law, must center that analysis on the FAA.

The legislative history confirms our conclusion that the plaintiff must show that his or her claim is consistent with federal law, in particular the FAA, to prevail under § 7515. During consideration of the proposed legislation on the New York State Senate floor, the sponsor of the bill, Senator Catharine Young, recognized "that the Federal Arbitration Act generally preempts state law that treats arbitration less favorably than other arrangements."[46] In light of the FAA, Senator Young explained that the legislation was intended "to

---

[43] *See, e.g., People v. Santana*, 7 N.Y.3d 234, 237 (2006) ("As a matter of common sense and reasonable pleading, we do not believe that the Legislature intended to require the People to negate each of the alternatives . . . ." (internal quotation marks and citation omitted)).

[44] *See generally* 9 U.S.C. § 1 et seq.

[45] *See e.g., AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 341 (2011) ("When state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA."); *Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 137 S. Ct. 1421, 1426-27 (2017); *DIRECTV, Inc. v. Imburgia*, 577 U.S. 47, 58 (2015).

[46] N.Y. State Senate, Stenographic Rec., 241st Leg., Reg. Sess., at 1851 (Mar. 30, 2018) (question of Sen. Elizabeth Krueger and response of Sen. Young).

acknowledge . . . that there may be some extra protections that would apply" to victims of sexual harassment.[47]  Accordingly, she confirmed that the first step in evaluating a challenge to arbitration premised on § 7515 would be to "check the federal rules."[48]  Considered together, the statutory text and context make plain that a claim under § 7515 requires the resolution of a federal question.

In sum, we conclude that Tantaros's claim necessarily raises a federal question.

### B. Substantial

The issue of federal law must also be substantial—that is, important not solely to the parties in the immediate case but also to "the federal system as a whole."[49]  An issue tends to be substantial if it is "a nearly pure issue of law, one that could be settled once and for all and thereafter would govern numerous [similar] cases."[50]  The Supreme Court and this court have found a significant federal interest in the interpretation of a federal law, such as in disputes over the meaning of a federal tax law,[51] the scope of an Internal Revenue Code regulation,[52] and the duties imposed by the Securities Exchange Act.[53]

---

[47] *Id.* (statement of Sen. Young).

[48] *Id.* at 1852-53 (statement of Sen. Young) ("What we would have to do, you know, if there was such a case brought forward [under § 7515], we would have to check the federal rules.").

[49] *Gunn*, 568 U.S. at 260.

[50] *Empire Healthchoice Assur.*, 547 U.S. at 700 (internal quotation marks omitted).

[51] *Grable*, 545 U.S. at 315.

[52] *New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A.*, 824 F.3d 308, 318 (2d Cir. 2016).

[53] *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1024 (2d Cir. 2014).

We have no doubt that this case presents a substantial question of federal law.  The federal question is a purely legal one concerning the preemptive effect of a federal statute.  Being neither "fact-bound [nor] situation-specific,"[54] the issue will inform all future claims brought under § 7515.  Moreover, the case implicates the FAA and the "national policy favoring arbitration" established by Congress.[55] "[The Supreme Court's] cases place it beyond dispute that the FAA was designed to promote arbitration" and put in place a "federal policy favoring arbitration agreements, notwithstanding any state . . . policies to the contrary."[56]  Whether the prohibition on mandatory arbitration clauses undermines that goal is a significant issue warranting uniform adjudication in the federal courts.

Tantaros's argument that the issue would affect only the small subset of sexual harassment claims is undermined by the fact that § 7515 was amended 18 months after its enactment to apply to mandatory arbitration clauses covering all discrimination claims. And in the three years since the law's enactment, district courts have addressed the effect of § 7515 in no less than six cases.[57]  We conclude that Tantaros's suit presents a substantial federal issue.

---

[54] *Empire Healthchoice Assur.*, 547 U.S. at 701.

[55] *Concepcion*, 563 U.S. at 339 (internal quotation marks omitted).

[56] *Id.* at 345-46 (internal quotation marks omitted).

[57] *See Wyche v. KM Sys., Inc.*, No. 19-CV-7202(KAM), 2021 WL 1535529, at *2 (E.D.N.Y. Apr. 19, 2021); *Rollag v. Cowen Inc.*, No. 20-CV-5138 (RA), 2021 WL 807210, at *5 (S.D.N.Y. Mar. 3, 2021); *Charter Commc'ns, Inc. v. Garfin*, No. 20 CIV. 7049 (KPF), 2021 WL 694549, at *13-14 (S.D.N.Y. Feb. 23, 2021); *Gilbert v. Indeed, Inc.*, No. 20 Civ. 3826 (LJL), 2021 WL 169111, at *13-15 (S.D.N.Y. Jan. 19, 2021); *White v. WeWork Cos.*, No. 20 Civ. 1800 (CM), 2020 WL 3099969, at *5 (S.D.N.Y. June 11, 2020); *Latif v. Morgan Stanley & Co.*, No. 18 Civ. 11528 (DLC), 2019 WL 2610985, at *3-4 (S.D.N.Y. June 26, 2019).

### C. Capable of Resolution in Federal Court Without Disrupting the Federal-State Balance

Even where the state action necessarily raises a disputed and substantial issue of federal law, federal jurisdiction lies only if adjudication in a federal forum would be consistent with the "congressionally approved balance of state and federal judicial responsibilities," defined by "the nature of the claim, the traditional forum for such a claim, and the volume of cases that would be affected."[58] "Absent a special state interest in a category of litigation, or an express congressional preference to avoid federal adjudication, federal questions that implicate substantial federal interests . . . 'sensibly belong[] in a federal court.'"[59]

We discern no threat to the balance of federal and state responsibilities that weighs against the exercise of federal jurisdiction here. The Supreme Court has recognized that the FAA established concurrent federal-state jurisdiction and that "state courts have a prominent role to play as enforcers of agreements to arbitrate."[60] That said, the Court has also emphasized that, "although enforcement of the [Federal Arbitration] Act is left in large part to the state courts, it nevertheless represents federal policy to be vindicated by the federal courts where otherwise appropriate."[61] The enforceability of a specific arbitration agreement, and the validity of § 7515, are two distinct issues. While the former involves routine application of the FAA, the latter requires consideration of the preemptive impact of the

---

[58] *Jacobson*, 824 F.3d at 316.

[59] *Id.* (quoting *Grable*, 545 U.S. at 315).

[60] *Vaden v. Discover Bank*, 556 U.S. 49, 59 (2009).

[61] *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32 (1983).

FAA, the scope of the state law, and the extent to which the two may conflict. Such questions have precisely the sort of significance to the federal system that supports adjudication in a federal forum. While New York state has a competing interest in deciding the meaning of its own laws, the New York legislature drafted § 7515 clearly mindful of federal law and the possibility that such § 7515 claims may be removed to federal court.

Moreover, exercising federal jurisdiction over this case will not divert many cases from state court. If federal courts conclude that the FAA preempts § 7515, future parties will less likely dispute the issue and such cases will proceed directly to arbitration. If federal courts find § 7515 to accord with the FAA, future claims will remain in state court.

Finally, we note that today's decision casts no doubt on the ability of state courts to carry out their "oblig[ation] to honor and enforce agreements to arbitrate."[62] State courts are familiar with the FAA and well-versed in resolving conflicts between state and federal law. That said, it is well established that substantial questions of federal law, absent a special state interest, may be heard in a federal court.[63] Because resolution of a significant federal issue is necessary to Tantaros's claim, we hold that it warrants "resort to the experience, solicitude, and hope of uniformity that a federal forum offers."[64] We therefore decline to disturb the district court's refusal to remand this case to state court.

---

[62] *Vaden*, 556 U.S. at 71.

[63] *See 53rd Street, LLC*, 2021 WL 3412063, at *5 (noting the "inevitable additional burdens of cost and delay" in certifying a question to state court and declining to do so where "no special concerns . . . favor certification").

[64] *Grable*, 545 U.S. at 312.

## CONCLUSION

For the foregoing reasons, we AFFIRM the district court's December 17, 2019 order.

WESLEY, *Circuit Judge*, dissenting:

When there is an unsettled and important question of New York law that is determinative of an appeal, certification to the New York Court of Appeals is warranted. *See, e.g.*, *Pasternack v. Lab'y Corp. of Am. Holdings*, 807 F.3d 14, 19 (2d Cir.), *as amended* (Nov. 23, 2015). Because it is far from "plain" that New York Civil Practice Law and Rule § 7515 ("§ 7515" or "Section 7515") requires plaintiffs to plead "that [their] claim is consistent with federal law," Maj. Op. at 14–15, this issue should be certified for consideration by the New York Court of Appeals.

Section 7515 provides "[e]xcept where inconsistent with federal law, no written contract . . . shall contain a prohibited clause" and "the provisions of such prohibited clause . . . shall be null and void." N.Y. C.P.L.R. § 7515(a)(4)(b)(i), (iii). A "prohibited clause" is "any clause or provision in any contract which requires . . . that the parties submit to mandatory arbitration to resolve any allegation or claim of discrimination," including sexual harassment claims. *Id.* § 7515(a)(2). A federal court may exercise federal question jurisdiction "even where a claim finds its origins in state rather than federal law" if "a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal

1

court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013).

A state-law claim necessarily raises a federal issue where the federal issue is an element of the plaintiff's claim; in other words, "where the claim is affirmatively 'premised' on a violation of federal law." *New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A.*, 824 F.3d 308, 315 (2d Cir. 2016) (quoting *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005)). The *Grable/Gunn* test for federal question removal jurisdiction "typically fits cases . . . in which a state-law cause of action is 'brought to enforce' a duty created by [federal law] because the claim's very success depends on giving effect to a federal requirement." *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 136 S. Ct. 1562, 1570 (2016). Accordingly, for § 7515 to satisfy the "necessarily raises a federal issue" factor, it must require plaintiffs *to plead as an element of their § 7515 claim* that their claim is not inconsistent with federal law.

Section 7515 does not condition the prohibition of mandatory arbitration clauses for discrimination claims on the satisfaction of federal law requirements. Instead, the "[e]xcept where inconsistent with federal law" clause in § 7515 states

2

the obvious: *all* state statutes must be consistent with federal law under the Supremacy Clause of the Constitution; the Supremacy Clause principle exists independently of any statute.  *See* U.S. Const. art. VI, cl. 2.  The majority contends § 7515 "does not simply state the obvious" because "§ 7515 reflects the legislature's deliberate choice to require the plaintiff, at the very outset of bringing a claim under the statute, to plead consistency with federal law."  Maj. Op. at 11.  This is circular reasoning; the majority uses its conclusion that a federal law issue is an essential element of a plaintiff's § 7515 claim to surmise that § 7515 does not simply state the obvious.[1]

The majority's "exception versus proviso" discussion also comes up short because it misses the premise that "[a]n exception takes out of the statute

---

[1] Section 7515 likewise does not "transform[]" federal preemption questions from "'doubtful and conjectural' issues into a concrete dispute ripe for judicial review."  Maj. Op. at 11 (quoting *Gully v. First Nat. Bank*, 299 U.S. 109, 117 (1936)).  The issue of whether the Federal Arbitration Act ("FAA") preempts § 7515 becomes concrete, for example, as soon as the defendant raises the defense in its answer or upon a motion to compel arbitration, both of which are insufficient for federal question removal jurisdiction.  *See Ten Taxpayer Citizens Grp. v. Cape Wind Assocs., LLC*, 373 F.3d 183, 191 (1st Cir. 2004) ("It is hornbook law that a federal defense does not confer [federal question] jurisdiction, regardless whether that defense is anticipated in the plaintiff's complaint. That is generally true even where the asserted defense is the preemptive effect of a federal statute.") (citation omitted).

3

something that otherwise would be part of the subject matter." N.Y. Stat. Law § 211 (McKinney's Notes). The "[e]xcept where inconsistent with federal law" clause does not create an exception that the plaintiff bears the burden of pleading because it does not "take[] out of the statute something that otherwise would be part" of the claim; § 7515 would not withstand inconsistency with federal law regardless of whether that is articulated in the text of the statute. *See id.*

"A basic consideration in the interpretation of a statute is the general spirit and purpose underlying its enactment, and that construction is to be preferred which furthers the object, spirit and purpose of the statute." N.Y. Stat. Law § 96. Section 7515 was intended "to get at serial sexual predators who have taken advantage of the system" and "deal[] with the scourge of sexual harassment."[2] N.Y. State Senate, Stenographic Rec., 241st Leg., Reg. Sess., at 1853, 1855 (Mar. 30,

---

[2] The majority quotes excerpts from the New York State Senate floor hearing where Senator Catharine Young, the sponsor of the bill, discussed the possibility of federal preemption. *See* Maj. Op. at 14. Senator Young understood § 7515 as potentially providing "extra protections" for forms of discrimination other than sexual harassment "[i]f there's a federal preemption" and explained that "we would have to check the federal rules" to determine if § 7515 would extend to a "gender harassment" case. *See* N.Y. State Senate, Stenographic Rec., 241st Leg., Reg. Sess., at 1851–53 (Mar. 30, 2018). Nothing in that discussion indicates that the legislature's intent was to require plaintiffs to plead that their § 7515 claim is not inconsistent with federal law.

4

2018). Requiring plaintiffs to plead a broad matter of law in the negative—that their claim is *not inconsistent with federal law*—strikes me as overly burdensome and contrary to the statute's general spirit and purpose; what would such a pleading look like? Although "meaning and effect should be given to all . . . language, if possible," N.Y. Stat. Law § 231, "when the intent is obvious a single word or expression may be disregarded as of no force," *id.* (McKinney's Notes). Construing the "[e]xcept where inconsistent with federal law" language as being included as "a matter of form from an abundance of caution," *id.*, better accords with the statute's aim than does transforming the obvious into an onerous pleading burden on the very individuals it is designed to protect.[3]

This case bears all the hallmarks that warrant certification to the New York Court of Appeals. There is no New York state court decision addressing this issue, it implicates important state policy concerns, and the plain text of the statute does not support the majority's construction. *See Pasternack*, 807 F.3d at 22. Indeed, I

---

[3] The majority concedes "the pleading burden . . . could possibly support Tantaros's reading of § 7515" but is unpersuaded that the burden is "too onerous" because "[i]t is quite evident that the § 7515 limitation is directed at one particular statute, the FAA." Maj. Op. at 13. The majority's assumption contravenes the plain text of the statute, which states "[e]xcept where inconsistent with *federal law*," not just the FAA. N.Y. C.P.L.R. § 7515(a)(4)(b)(i), (iii) (emphasis added).

am hard-pressed to believe the New York State Legislature intended to make virtually every § 7515 claim, a purely state-law right, removable to federal court. *See* N.Y. State Senate, Stenographic Rec., 241st Leg., Reg. Sess., at 1856 (Mar. 30, 2018) (Senator Young explaining that "one of the reasons that we [codify certain parts of federal law]" is to "open[] the door so that someone can go to a state court instead of having to go to a federal court").[4]

Because the New York Court of Appeals is the umpire better suited to make this call, I would reserve decision and certify the question of whether § 7515 requires plaintiffs to plead that their claim is not inconsistent with federal law to the New York Court of Appeals.

---

[4] The majority quotes a recent case observing that "there are drawbacks to certification" such as increased expenses for the parties and delays.  Maj. Op. at 9 n.24; 18 n.63 (quoting *53rd St., LLC v. U.S. Bank Nat'l Ass'n*, No. 20-1804-CV, 2021 WL 3412063, at *5 (2d Cir. Aug. 5, 2021)).  But unlike *53rd St.*, a diversity jurisdiction case where the panel's decision relied on the application of an opinion by the New York Court of Appeals, *see* 2021 WL 3412063, at *4, here there is no equivalent.  Contrary to Judge Leval's point that "New York's highest court . . . does not lack opportunities to establish New York law in these matters," *id.* at *5, the majority's decision in effect deprives New York courts of the chance to apply its own statute by making virtually every § 7515 claim removable without seeking input from the judicial authority best equipped to interpret New York law.  The "special concerns," *id.*, involved in this case bear no resemblance to the circumstances in *53rd St.*