21-2158-cv (L)
Leroy v. Hume

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 13th day of April, two thousand twenty-three.

PRESENT:
> JOHN M. WALKER, JR.,
> GERARD E. LYNCH,
> ALISON J. NATHAN,
> *Circuit Judges.*

---

Jeffry Leroy, as Co-Guardian of Silvia Leroy, Incapacitated Person and Individually, Silvia Leroy,

> *Plaintiffs-Appellees*,

v.

Heather Hume, M.D., Mira John, M.D., Mount Sinai Hospital, Mary Toussaint-Milord, M.D., Kaniz B. Banu, M.D., Mahreen Akram, M.D., Jamie Celestin-Edwards, Brookdale Hospital Medical Center, Jill Berkin, M.D., Kevin Troy, M.D.,

> *Defendants-Appellants*,

Mindy Brittner, M.D.,

> *Defendant*.

21-2158-cv
21-2159-cv

---

FOR PLAINTIFFS-APPELLEES:

ANNETTE G. HASAPIDIS, Hasapidis Law Offices, Ridgefield, CT (Jordan Merson, Merson Law, PLLC, New York, NY, *on the brief*)

FOR DEFENDANTS-APPELLANTS
HEATHER HUME, M.D., MIRA JOHN,
M.D., MOUNT SINAI HOSPITAL,
JILL BERKIN, M.D., KEVIN TROY, M.D.:

JEFFREY T. WOLBER, Hall Booth Smith, P.C., New York, NY (John E. Hall, Jr., Hall Booth Smith, P.C., Atlanta, GA, Larry David Bloomstein, Aaronson, Rappaport, Feinstein & Deutsch, LLP, New York, NY, *on the brief*).

FOR DEFENDANTS-APPELLANTS
MARY TOUSSAINT-MILORD, M.D.,
KANIZ B. BANU, M.D., MAHREEN AKRAM,
M.D., JAMIE CELESTIN-EDWARDS,
BROOKDALE HOSPITAL MEDICAL CENTER:

CAITLIN JOAN HALLIGAN, (Ryan W. Allison, Max H. Siegel, *on the brief*), Selendy & Gay PLLC, New York, NY (Dylan C. Braverman, Charles K. Faillace, Megan Alice Lawless, Vigorito, Barker, Patterson, Nichols & Porter, LLP, New York, NY, *on the brief*).

FOR AMICUS CURIAE CHAMBER OF
COMMERCE OF THE UNITED STATES OF
AMERICA:

Tara S. Morrissey, Tyler S. Badgley, U.S. Chamber Litigation Center,

2

Washington, DC; Jeffrey S. Bucholtz, Alexander Kazam, King & Spalding LLP, Washington, DC.

FOR AMICUS CURIAE AMERICAN
HOSPITAL ASSOCIATION:                      Jeffrey S. Bucholtz, Alexander Kazam, King & Spalding LLP, Washington, DC.

FOR AMICI CURIAE AMERICAN MEDICAL
ASSOCIATION AND MEDICAL SOCIETY
OF THE STATE OF NEW YORK:                  Erin G. Sutton, American Medical Association, Chicago, IL.

FOR AMICI CURIAE GREATER NEW
YORK HOSPITAL ASSOCIATION,
HEALTHCARE ASSOCIATION OF NEW
YORK STATE, INC.:                          Henry M. Greenberg, Zackary Knaub, Greenberg Traurig, LLP, Albany, NY.

FOR AMICUS CURIAE DRI, INC.:               William M. Jay, Andrew Kim, Goodwin Procter LLP, Washington, DC.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Ross, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendants-Appellants appeal from the district court's grant of Plaintiffs-Appellees' motion to remand to state court for lack of subject-matter jurisdiction. This appeal concerns whether the district court had jurisdiction to adjudicate Plaintiffs' claims arising from medical care

rendered by Defendants in early 2020, during the onset of the COVID-19 pandemic. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

## BACKGROUND

On March 12, 2020, Plaintiff Silvia Leroy arrived at Brookdale Hospital Medical Center complaining of vomiting, chills, and fever. Leroy was discharged without being tested for COVID-19. However, on March 26, 2020, Leroy returned to Brookdale with a cough and fever and the next day tested positive for COVID-19. Over the next several days, Leroy's condition worsened, and on March 31, 2020, she was transferred to Mount Sinai Hospital. At Mount Sinai, Leroy was intubated and maintained on a ventilator for several days. On April 12, 2020, Leroy went into cardiopulmonary arrest. Leroy alleges that as a result of the cardiac arrest, she suffered a brain injury that caused cognitive issues and left her quadriplegic and in need of 24-hour care

In October 2020, Leroy and her guardians (collectively, Plaintiffs) filed suit against both Brookdale Hospital Medical Center and several of its employees (the Brookdale Defendants) and Mount Sinai Hospital and several of its employees (the Mount Sinai Defendants) in New York Supreme Court, Kings County. The complaint identified five causes of action: (1) "reckless misconduct, wanton, willful, reckless, and/or grossly negligent medical malpractice"; (2) lack of informed consent; (3) loss of services; and (4) and (5) negligent supervision. J. App'x 39–52. Defendants removed the case to the Eastern District of New York shortly thereafter. Plaintiffs moved to remand the case to state court, arguing that there was no basis for a federal court to exercise subject-matter jurisdiction over their claims. In August 2021, the district court granted Plaintiffs' motion and ordered the case remanded. *Leroy v. Hume*, 554 F. Supp. 3d 470 (E.D.N.Y.

4

2021).   This appeal followed.[1]

**DISCUSSION**

This appeal concerns whether this lawsuit was properly removed to federal court.   Under 28 U.S.C. § 1441(a), a state court defendant may remove "any civil action . . . of which the district courts of the United States have original jurisdiction."   Accordingly, when, as here, there is no "diversity of citizenship, federal-question jurisdiction is required."   *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).[2]   In addition, 28 U.S.C. § 1442(a)(1) provides that "any officer (or any person acting under that officer) of the United States or of any agency thereof" may remove a state court suit brought against them "for or relating to any act under color of such office."   The complaint here pleads only state law claims.   Nevertheless, Defendants contend that removal was proper because (1) the Public Readiness and Emergency Preparedness (PREP) Act completely preempts Plaintiffs' claims; (2) Plaintiffs' claims arise under federal law because they necessarily raise a substantial and disputed federal issue under the test articulated in *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005); and (3) Defendants "acted under" a federal officer when engaged in the conduct complained of.   The district court rejected each of those arguments and remanded the case to state court.

"We review *de novo* the district court's determination that it lacked subject matter jurisdiction and its decision to remand."   *Teamsters Loc. 404 Health Servs. & Ins. Plan v. King*

---

[1] Generally, this Court lacks jurisdiction over an appeal from an order remanding a case to state court for lack of removal jurisdiction.   *See* 28 U.S.C. § 1447(d).   There is an exception, however, for removals pursuant to the federal officer removal statute.   *Id.*; *see id.* § 1442.   And when, as here, such a ground for removal is asserted, this court has jurisdiction to address additional bases for removal rejected by the district court.   *See BP P.L.C. v. Mayor & City Council of Baltimore*, 141 S. Ct. 1532, 1538 (2021).

[2] Unless otherwise indicated, all internal citations, quotation marks, and alterations are omitted.

*Pharms., Inc.*, 906 F.3d 260, 264 (2d Cir. 2018). Because we agree that the district court lacked jurisdiction, we affirm.

## I. Complete Preemption

Defendants' first argument is that the PREP Act completely preempts Plaintiffs' state law claims. "Under the complete-preemption doctrine, certain federal statutes are construed to have such 'extraordinary' preemptive force that state-law claims coming within the scope of the federal statute are transformed, for jurisdictional purposes, into federal claims—i.e., completely preempted." *Sullivan v. Am. Airlines, Inc.*, 424 F.3d 267, 272 (2d Cir. 2005). "In concluding that a claim is completely preempted, a federal court finds that Congress desired not just to provide a federal defense to a state law claim but also to replace the state law claim with a federal law claim and thereby give the defendant the ability to seek adjudication of the claim in federal court." *Wurtz v. Rawlings Co.*, 761 F.3d 232, 238 (2d Cir. 2014). "[W]hen a claim is completely preempted, the law governing the complaint is exclusively federal." *Id.* at 238–39.

Defendants are not the first medical providers to argue that the PREP Act completely preempts state law claims of deficient medical care following the onset of the COVID-19 pandemic. In *Solomon v. St. Joseph Hospital*, we recently considered—and rejected—each of the jurisdictional arguments Defendants raise here. 62 F.4th 54 (2d Cir. 2023). We explained that "[t]he PREP Act provides broad immunity 'from suit and liability under Federal and state law with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure' during a public-health

6

emergency." *Id.* at 58 (quoting 42 U.S.C. § 247d-6d(a)(1)).[3] But we also explained that "nothing in the PREP Act suggests that Congress was attempting . . . to eliminate state-law causes of action for non-immunized claims." *Id.* at 62.

The plaintiffs in *Solomon* pled state-law claims for malpractice, negligence, and gross negligence. *Id.* at 61. Like Defendants here, the defendant hospital argued that the PREP Act completely preempted those claims. We disagreed. "To establish complete preemption, Defendants must first show that the PREP Act preempts state law and substitutes a federal remedy for that law, thereby creating an exclusive federal cause of action. Once this is established, the question becomes whether [the] state-law claims are within the scope of the federal cause of action. If so, the state-law claims are completely preempted." *Id.* at 60–61. We held that the plaintiff's claims were not completely preempted, because the only exclusive federal cause of action established by the PREP Act was for willful misconduct, as defined in 42 U.S.C. § 247d-6d(c). *See Solomon*, 62 F.4th at 61. "[C]laims for medical malpractice, negligence, and gross negligence are plainly not within the scope of willful misconduct," because "[n]egligence and gross negligence do not rise to the level of willful misconduct, which the PREP Act defines as 'a standard for liability that is more stringent than a standard of negligence *in any form*,'" and "under New York law, medical malpractice requires only a deviation from the community standards of practice that proximately caused the injuries," which "is more relaxed than the showing required for willful misconduct." *Id.* (quoting 42 U.S.C. § 247d-6d(c)(1)(B)).

---

[3] Effective February 4, 2020, the Secretary of Health and Human Services declared "COVID-19 . . . a public health emergency" and defined "covered countermeasures" as "any antiviral, any other drug, any biologic, any diagnostic, any other device, or any vaccine, used to treat, diagnose, cure, prevent, or mitigate COVID-19." Declaration Under the PREP Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 15,198, 15,202 (Mar. 17, 2020).

Nevertheless, Defendants argue that *Solomon*'s complete preemption analysis is distinguishable. They do so by pointing to Plaintiffs' first cause of action, which is styled in the complaint as being, in part, for "willful . . . medical malpractice," J. App'x at 39, and is characterized on appeal as "willful negligence," Appellees' Br. 31. Defendants contend that this claim is within the scope of the PREP Act's cause of action for willful misconduct, unlike the *Solomon* plaintiff's complaint. Defendants' argument is unavailing.

A claim for willful misconduct under the PREP Act requires a showing of "an act or omission that is taken (i) intentionally to achieve a wrongful purpose; (ii) knowingly without legal or factual justification; and (iii) in disregard of a known or obvious risk that is so great as to make it highly probable that the harm will outweigh the benefit." *Solomon*, 62 F.4th at 58 (quoting 42 U.S.C. § 247d-6d(c)(1)(A)). In addition, as *Solomon* emphasized, *id.* at 61, the standard for liability for willful misconduct under the PREP Act is defined as being "more stringent than a standard of negligence in any form or recklessness," 42 U.S.C. § 247d-6d(c)(1)(B). On its face, then, the statute excludes negligence "in any form"—including "willful" negligence—from the scope of a willful misconduct claim. *See Solomon*, 62 F.4th at 61 n.3 ("[T]his statutory language specifies that *no form of negligence* can constitute willful misconduct." (emphasis added)).

Moreover, "the Supreme Court has instructed that our preemption inquiry should not focus on the 'particular label affixed to' a particular claim." *Id.* (quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 214 (2004)). When we look to the actual factual allegations contained in the complaint, we see nothing from which a court could infer conduct approximating that which would support a claim of willful misconduct. The word "willful" appears only once, in the header for the first cause of action. J. App'x at 39. The complaint's factual allegations are, *inter alia*, that

8

Defendants "were grossly negligent and acted with reckless disregard with respect to the care and treatment rendered to" Leroy, including by "not testing for COVID-19" and "fail[ing] to properly monitor" her; that their medical services "were rendered recklessly, carelessly, unskillfully, and negligently"; that they "negligently failed to use ordinary and reasonable care, diligence and skills and acted with reckless disregard" for Leroy; and they "fail[ed] to properly and timely appreciate, diagnose, and/or treat" her symptoms due to their "carelessness, negligence, recklessness and gross negligence." *Id.* at 44–46 ¶¶ 36–40. As discussed above, these allegations do not a willful misconduct claim make. It follows that Plaintiffs' claims are not completely preempted by the PREP Act. This conclusion is in accord with the decisions of several of our sister circuits that have considered nearly identical arguments. *See, e.g.*, *Hudak v. Elmcroft of Sagamore Hills*, 58 F.4th 845, 854 (6th Cir. 2023) ("Aside from its labels, [the] complaint is devoid of allegations that [the defendant] took actions (i) intentionally to achieve a wrongful purpose; (ii) knowingly without legal or factual justification; and (iii) in disregard of a known or obvious risk that is so great as to make it highly probable that the harm will outweigh the benefit."); *Manyweather v. Woodlawn Manor, Inc.*, 40 F.4th 237, 245 (5th Cir. 2022) ("[N]owhere in their petition do the plaintiffs allege or imply that [the defendant] acted intentionally to achieve a wrongful purpose."); *Maglioli v. All. HC Holdings LLC*, 16 F.4th 393, 411 (3d Cir. 2021) ("[W]e cannot infer from [a] fleeting statement [that the defendants engaged in grossly reckless, willful, and wanton conduct] that the estates allege the nursing homes acted with intent to achieve a wrongful purpose, or with knowledge that their actions lacked legal or factual justification.").

Accordingly, as in *Solomon*, we hold that the PREP Act does not completely preempt Plaintiffs' claims.

9

## II.    "Arising Under" Jurisdiction

In addition to the complete preemption doctrine, Defendants invoke an alternative theory of federal question jurisdiction.   Under 28 U.S.C. § 1331, federal courts have subject-matter jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States."   "[E]ven where a claim finds its origins in state rather than federal law," "arising under" jurisdiction still lies in "a special and small category of cases" in which the federal issue is: "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress."   *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (citing *Grable*, 545 U.S. at 313–14).   Defendants argue that Plaintiffs' claims fall within this "special and small category of cases."

We disagree.   Here, as in *Solomon*, the "complaint raises claims under New York law and does not, on its face, raise questions of federal law," and while "Defendants have sought to avail themselves of the immunity granted under the PREP Act, our inquiry must be unaided by anything alleged in anticipation or avoidance of defenses which it is thought the defendant may interpose . . . even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case."   62 F.4th at 64.   Accordingly, no federal issue is necessarily raised, so Defendants' argument fails at the first step of the analysis.

Defendants' efforts to distinguish *Solomon* on this point are unavailing.   They contend that "Plaintiffs' claims necessarily raise a substantial, disputed question of federal law and thus arise under federal law" because "they are based upon a duty of care created by federal law." Brookdale Supp. Br. 5.   But this argument is, at bottom, merely a repackaging of Defendants' complete preemption arguments and repeats their misunderstanding of the nature of the PREP Act.

10

As *Solomon* explained, "the PREP Act principally creates an *immunity* scheme." 62 F.4th at 61 (emphasis added). The standard of care applicable to Plaintiffs' state-law claims remains defined by New York law. *See id.* The fact that the statute provides that "no State . . . may establish, enforce, or continue in effect with respect to a covered countermeasure any provision of law or legal requirement that . . . is different from, or is in conflict with, any requirement applicable under this section," 42 U.S.C. § 247d-6d(b)(8)(A), merely creates an ordinary preemption *defense* that can be raised in the normal course of litigation. As with the PREP Act's immunity provision, courts must then consider whether the defense applies. "If the answer is no . . . there is no federal law left to apply and the case can proceed under state law." *Solomon*, 62 F.4th at 61 n.4. And if the answer is yes, the defense "ends the case." *Id.* But the existence of such a defense does not move the needle for Defendants' "arising under" argument, because our "inquiry must be unaided by anything alleged in anticipation or avoidance of defenses which it is thought the defendant may interpose." *Tantaros v. Fox News Network, LLC*, 12 F.4th 135, 141 (2d Cir. 2021).

Accordingly, we hold that Plaintiffs' claims do not arise under federal law under the test articulated in *Grable* and *Gunn*.

### III. Federal Officer Removal

Finally, the Brookdale Defendants invoke the federal officer removal statute.[4] To do so, "a defendant who is not himself a federal officer must demonstrate that (1) the defendant is a person under the statute, (2) the defendant acted under color of federal office, and (3) the defendant has a colorable federal defense." *Agyin v. Razmzan*, 986 F.3d 168, 174 (2d Cir. 2021). With

---

[4] The Mount Sinai Defendants do not argue on appeal that federal officer removal applies.

11

respect to the second element, "the word 'under' must refer to . . . a relationship that involves acting in a certain capacity, considered in relation to one holding a superior position or office," *i.e.*, a relationship that "involves subjection, guidance, or control." *Watson v. Philip Morris Cos.*, 551 U.S. 142, 151 (2007). "In addition, . . . the private person's 'acting under' must involve an effort to *assist*, or to help *carry out*, the duties or tasks of the federal superior." *Id.* at 152. "[T]he help or assistance necessary to bring a private person within the scope of the statute does *not* include simply *complying* with the law." *Id.*

In *Solomon*, as here, the defendant hospital claimed that it was acting under federal officers for purposes of 28 U.S.C. § 1442. We rejected that argument, explaining that "Defendants do not 'act under' a federal officer simply because they operate in a heavily regulated industry," and that "Defendants' role during the COVID-19 pandemic has nothing to do with whether they were 'acting under' a federal officer," because "[i]t cannot be that the federal government's mere designation of an industry as important—or even critical—is sufficient to federalize an entity's operations and confer federal jurisdiction." *Solomon*, 62 F.4th at 63. The Brookdale Defendants' federal officer arguments fall short for the same reasons. While the Brookdale Defendants emphasize the important role played by health care providers in the early days of the COVID-19 pandemic, the government directives they cite ultimately consist of guidance and regulations, which do not suffice to establish the requisite "special relationship" to find they acted under federal officers within the meaning of the statute. *Watson*, 551 U.S. at 156–57 (emphasizing the absence of "any delegation of legal authority" or "evidence of any contract, any payment, any employer/employee relationship, or any principal/agent arrangement" in holding federal officer removal did not apply).

12

Accordingly, we hold that the federal officer removal statute does not apply.

\*\*\*

We have considered Appellants' remaining arguments and find them to be without merit.

For the foregoing reasons, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court